### In re CHATEAU ROYALE, LTD., Debtor.

### Bankruptcy No. 79–04135.

United States Bankruptcy Court, N. D. Florida, Pensacola Division.

May 15, 1980.

John E. Venn, Jr., Tampa, Fla., and Samuel J. Zusmann, Jr., Atlanta, Ga., for debtor Chateau Royale, Ltd.

Kenneth R. Ridlehoover, Pensacola, Fla., for creditor, Realty Center, Inc.

## OPINION

N. SANDERS SAULS, Bankruptcy Judge.

The facts and status of proceedings with respect to this controversy are as follows: Chateau Royale, Ltd., the debtor in these proceedings, filed its petition under Chapter 11 of Title 11 of the United States Code on October 4, 1979. Preparatory to formulation of its plan, the debtor pursuant to court order sold that certain apartment complex known as Chateau Royale located in Escambia County, Florida, free and clear of all liens except a first and second mortgage on said premises. Prior to the filing of the petition herein, the first mortgage was current, but the second mortgagee had instituted foreclosure proceedings in state circuit court. After considerable litigation with respect to the second mortgagee's complaint for relief from the stay of § 362 in this court, a compromise settlement was approved whereby the property was to be either sold or converted to condominiums in accordance with specified conditions and provisions with respect to time, amounts due, and terms of any such sale or conversion.

As aforesaid, on March 31, 1980, the apartment complex and related miscellaneous items of personalty were sold free and clear of all liens save the first and second mortgages, the latter mortgage being reinstated by agreement of the parties from the proceeds of the sale.

Realty Center, Inc. has asserted a secured claim against the balance of the sale proceeds. Its claim, to which the debtor–in–possession objects, is based upon an alleged third mortgage executed and recorded subsequent to the second mortgage. The mortgage asserted was executed by Chateau Royale, Ltd. securing the original principal sum of $35,000 on September 17, 1976, and was recorded on September 21, 1976, in the official records of Escambia County.

The mortgage as recorded did not contain any legal description of the property to be encumbered. The reference in said mortgage to the property to be encumbered was that property "more particularly described in Schedule 'A' hereto attached and by reference made a part hereof". The schedule "A" referred to was not attached and was not filed prior to the institution of these proceedings.

Having considered the pleadings, the evidence, and the argument of counsel, the court hereby enters its findings and opinion.

The issue is whether the defective recording of the subject mortgage by reason of the omission of the aforesaid legal description renders the mortgage invalid and avoidable as against the trustee–like rights of the debtor–in–possession pursuant to § 544(a) of Title 11.

Under § 544(a) a trustee or debtor–in–possession occupies the status of an ideal judicial lien creditor, irreproachable and without actual knowledge or notice of any outstanding claim, lien or equity, irregardless of the existence of any actual creditor with knowledge or notice, and also irregardless of any actual knowledge or notice on the part of the debtor, or the trustee or debtor–in–possession personally. 4 *Collier*, ¶ 544.02 (15th Ed.); 4A *Collier*, ¶¶ 70.04, 70.-52 (14th Ed.); *In re American Mortgage and Financial Company*, 5 BCD 769 (N.D. Fla.1979).

■ The acquisition of such status and the conditions upon which such status is attained are matters of federal law. 4 *Collier*, ¶ 544.02 (15th Ed.); 4A *Collier*, ¶ 70.49 (14th Ed.); *Commercial Credit Co., Inc. v. Davidson*, 112 F.2d 54 (5th Cir. 1940). However, the extent of the rights and powers thus acquired is to be determined by state law. 4 *Collier*, ¶ 544.02 (15th Ed.); 4A *Collier*, ¶ 70.49 (14th Ed.); *Commercial Credit Co. v. Davidson, supra; In re Ludlum Enterprises, Inc.*, 510 F.2d 996 (5th Cir. 1975); *Matter of Clifford*, 566 F.2d 1023 (5th Cir. 1978); *In re American Mortgage and Financial Company, supra.*

The question thus is, what are the rights of the lien creditor under Florida law as to a mortgagee with a deficient or erroneous description in his recorded mortgage?

The Florida recording statute, § 695.01, Fla.Stat., reads as follows:

"No conveyance, transfer or mortgage of real property, or any interest therein . . . shall be good and effectual in law or [in] equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; . . . "

■ Although the Florida statute does not specify the kind of creditors it is designed to protect, it is well established that it applies only to a creditor who has reduced his claim to a lien or judgment. See, *Carolina Portland Cement Co. v. Roper*, 68 Fla. 299, 67 So. 115, 116 (1914); *Lusk v. Reel*, 36 Fla. 418, 18 So. 582, 584 (1895); *Freligh v. Maurer*, 111 So.2d 712 (Fla. 2 DCA 1959).

Unlike some states, Florida's recording statute provides for both creditors and subsequent purchasers for value without notice. Under such state recording statute, the class of creditors upon which it operates and protects is composed of those creditors without actual knowledge or notice of either *unrecorded* or *recorded* liens. If a lien is *recorded*, a creditor who has no actual knowledge thereof is still charged constructively with notice. He is thus bound by the record notice and afforded no superior right. If a lien is *unrecorded*, a creditor who has no actual knowledge cannot accordingly be charged with any constructive notice and, hence, is afforded a superior right against an *unrecorded* instrument. The effect of § 544(a) is to always place a trustee, or those claiming under a trustee's rights, within the protection of the recording statute when an *unrecorded* instrument is involved since a trustee is deemed to be without actual knowledge or notice. On the other hand, an ordinary creditor with actual notice gets no protection. But, a trustee must, as any other creditor, be charged with constructive notice in the case of a *recorded* instrument even though he is without actual notice or knowledge thereof. *In re American Mortgage and Financial Company, supra.*

This is well stated and demonstrated by a quotation from a relatively old Third Circuit case, *Taplinger v. Northwestern National Bank*, 101 F.2d 274 (1938), involving a recorded instrument, at page 276;

"In the case before us, the trustee in bankruptcy had the status of an execution creditor without actual notice of secret liens. Consequently, unless the notation of the lien of the pledge upon the certificates of title to the pledged motor

vehicles rendered the pledge enforceable as against [levying] execution creditors without actual notice, it was not enforceable against the trustee and the appellee was not entitled to reclaim the pledged vehicles from him."

It is clear that under § 695.01, Fla.Stat., an unrecorded mortgage would be void against a subsequent judgment creditor without actual knowledge or notice such as a trustee. But, here, the mortgage was recorded albeit with a defective and missing description.

Immediately following the attempted description, this language appeared on the face of the subject recorded mortgage:

"This Mortgage is subordinate and inferior to that certain mortgage by and between David J. Kalin and Roberta Kalin, husband and wife, Stanley A. Mallin and Virginia Mallin, husband and wife, and the Florida National Bank at Pensacola, in the original principal amount of $360,-000.00, executed April 24, 1964, and recorded in O.R. Book 159, page 469 in Escambia County, Florida, said mortgage subsequently assigned to John Hancock Life Insurance Company on the 31st day of December, 1964, and recorded in Assignment Book 213, at Page 91, in Escambia County, Florida; and that certain Purchase Money Wrap Around Mortgage with Balloon by and between Chateau Royale, Ltd., a Florida Limited Partnership, and David J. Kalin and Charles S. Liberis, as tenants in common in the original principal amount of $525,000.00, executed on September 17, 1976, and recorded in the Public Records of Escambia."

Paraphrasing the language of *Taplinger, supra,* unless the notation or record of the mortgage renders the same enforceable as against a Florida judgment lien creditor without actual notice, said mortgage is not enforceable against a trustee or debtor–in–possession. With respect to the lack of a description in a mortgage, Florida's courts have said:

"Where land intended to be mortgaged cannot be identified because of a lack of description the mortgage is ineffective unless it is reformed. *Fla. Bank & Trust Co. of West Palm Beach v. Ocean & Lake Realty Co.,* 118 Fla. 695, 160 So. 1 (1935). Therefore, recording a mortgage with *no* description imparts notice of nothing and defeats the very effect and purpose of recordation. See 28 Fla.Jur., Records and Recording Acts, §§ 42, 44, 52."

*Air Flow Heating and Air Conditioning, Inc. v. Baker,* 326 So.2d 449, 451 (Fla. 4th DCA 1976).

However, Florida's recording statute is a notice type statute and its courts have interpreted it liberally. As stated by the court in the *Air Flow* case, *supra,* at p. 451:

"We are not unmindful of the proposition that reference may be made in a recorded document to a deed or other document for the purpose of aiding any defect or uncertainty created by the recorded instrument. *Sapp v. Warner,* 105 Fla. 245, 141 So. 124, 143 So. 648, 144 So. 481 (1932); *Gradolph v. Ricou,* 104 Fla. 237, 139 So. 579 (1932). A creditor or encumbrancer is thereby placed on notice by the reference to such other deed or document to the extent that there is a duty to make further inquiry of that deed or unrecorded document. If a reasonable and prudent person would be apprised of the existence of a right by reference to another document or if reference to another document can supply what clearly and reasonably appears to be an omission or defect in an essential part of the recorded instrument then notice is presumed as a matter of 'implied' actual notice. See *Sapp v. Warner, supra.*"

*Sapp v. Warner,* 105 Fla. 245, 141 So. 124 (1932), is the landmark case in Florida. As stated in *Sapp,* at page 127:

"Notice is of two kinds, actual and constructive. 'Constructive notice' has been defined as notice imputed to a person not having actual notice; for example, such as would be imputed under the recording statutes to persons dealing with property subject to those statutes. 'Actual notice' is also said to be of two kinds: (1) Express, which includes what might be called direct information; and (2) im-

**12**

plied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use, or, as it is sometimes called, 'implied actual notice.' (citations omitted) Constructive notice is a legal inference, while implied actual notice is an inference of fact, but the same facts may sometimes be such as to prove both constructive and implied actual notice. (citations omitted).

The principle applied in cases of alleged implied actual notice is that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." (citations omitted).

See also, *Hardaway Timber Co. v. Hansford*, 245 So.2d 911 (Fla. 1st DCA 1971), citing the *Sapp* case, and *Gradolph v. Ricou*, 104 Fla. 237, 139 So. 579 (1932) stating that constructive notice includes all recitals, references or matters appearing upon the face of any instrument which forms an essential link in the chain of title.

■ Whether characterized as constructive notice or implied actual notice, one charged with examination of the record title may be bound by defective, erroneous or incomplete matters of record the discovery of which would lead to a duty to further inquire. The great liberality with which the Florida statute has been interpreted is amply demonstrated by the statement in § 37.01 *Boyer, Florida Real Estate Transactions*, at p. 718:

"When an instrument is not entitled to record because of defect in execution or acknowledgement, its recordation does not constitute constructive notice. This does not mean that it can be ignored, however. If such an improperly recorded instrument is discovered, or a copy of it is included in an abstract of title concerning the land in question, then such a subsequent purchaser has a type of actual notice and must make inquiry to determine

any outstanding interests arising from such instrument. This effect is sometimes referred to as implied actual notice."

■ Applying Florida's law to the facts at hand, it must be concluded that the debtor–in–possession, as a lien creditor, is bound by the facts in the record suggesting inquiry and cannot prevail so as to render the subject mortgage invalid. It clearly appears from the face of the subject mortgage that, immediately following the language purporting to describe the property to be encumbered, reference or recitals to other recorded documents were made sufficient to place a subsequent creditor or encumbrancer on notice to the extent that there was a duty to make further inquiry. An ordinary prudent examiner would have been alerted to this duty to further inquire, and "if a reasonable and prudent person would be advised of the existence of a right by reference to another document or if reference to another document can supply what clearly and reasonably appears to be an omission or defect in an essential part of the recorded instrument then notice is presumed as a matter of 'implied' actual notice". *Air Flow Heating and Air Conditioning, Inc. v. Baker, supra.*

■ Having determined that the subject mortgage is valid as against the trustee and that Realty Center, Inc.'s claim is a secured claim with respect to a part of the sale proceeds, attention must now be directed to the amount payable thereunder in addition to the outstanding principle balance of the claim.

Section 506(b) of Title 11 is determinative. It provides:

"To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose."

Thus interest up to the date of sale is and shall be allowable, together with reasonable attorneys' fees in the sum of $2,500.00, to which the debtor does not object, and costs incurred in the amount of $240.45. However, as provided in § 506(b), the amount of the sale proceeds allocable to the secured creditor is subject to the reasonable and necessary costs and expenses incurred in preserving and disposing of the property to the extent that there has been any benefit to the secured claimant pursuant to § 506(c). 4 *Collier*, ¶ 506.06; 4A *Collier*, ¶ 70.99, pp. 1234–1243.

Accordingly, the parties are directed to obtain a hearing for determination of such costs and expenses to be deducted, if any.

Order shall issue in accordance herewith.